IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANTHONY A. PEARCE, | § § | |
| *Plaintiff*, | § § | 5-18-CV-01131-XR-RBF |
| vs. | § § | |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION[1]; | § § § § | |
| *Defendant*. | § § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Plaintiff Anthony A. Pearce's request for judicial review of the administrative denial of his application for disability-insurance benefits under Title II of the Social Security Act. This action was assigned for a report and recommendation pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules, and the docket management order entered on October 8, 2019[2] in the San Antonio Division of the Western District of Texas. The Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g). Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

---

[1] On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social Security. Accordingly, Saul has been substituted for the named Defendant, Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

[2] This action as originally referred on October 29, 2018 pursuant to the docket management order entered on September 29, 2017. The September 29, 2017 docket management order, however, has been superseded by the October 8, 2019 docket management order.

After considering Pearce's Brief, Dkt. No. 19, the Brief in Support of the Commissioner's Decision, Dkt. No. 20, the transcript of the administrative proceedings ("Tr."), Dkt. No. 16, the other pleadings on file, the applicable authorities and regulatory provisions, and the entire record in this matter, I conclude that substantial evidence supports the Commissioner's decision and the administrative proceedings involved no reversible legal error. The Commissioner's decision should therefore be **AFFIRMED**.

I. **Factual and Procedural Background**

Plaintiff Pearce filed his application for disability-insurance benefits on October 2, 2015, alleging a disability onset date of July 9, 2015. *See* Tr. 182-83.[3] Pearce was 45 years old on the date he alleges he became disabled and 48 years old at the time of the Administrative Law Judge's ("ALJ") decision. Accordingly, Pearce is considered a "younger person" at all times pertinent to his claim. *See* 20 C.F.R. § 404.1563(c). Pearce has a high school education and has completed some college coursework. *See* Tr. 55. Pearce alleged the following impairments render him disabled: Diffuse Large B Cell Lymphoma, Subarachnoid Hemorrhage (Brain Bleed), neck/shoulder/back injury, difficulty in social situations, depression/anxiety, nausea/vomiting, chronic pain, trouble speaking/thinking, high blood pressure, and thyroid disorder. *See id.* 76. Pearce's claim was initially denied on May 5, 2016, *id.* 75-90, and once again on October 24, 2016 after he requested reconsideration, *id.* 91-108. Following the denial of his claim, Pearce requested and received an administrative hearing. *Id.* 125-69; 49-74. Pearce and his attorney attended the hearing on October 19, 2017, at which Pearce and vocational expert Judith Harper testified. *Id.* 26-46.

---

[3] There is an apparent minor discrepancy in the relevant date Pearce sought benefits. Pearce's Application for Disability Insurance Benefits, *id.*, states that he applied for benefits on October 2, 2015. The ALJ, however, asserts that Pearce filed his application on October 1, 2015. *See id.* 22. This minor one-day differential is not material here.

The ALJ denied Pearce's claim for benefits. *Id.* 22-43. In reaching that conclusion, the ALJ found that Pearce met the insured-status requirements of the Social Security Act through December 31, 2017 and, accordingly, the ALJ applied the five-step sequential analysis required by the regulations. *Id.* 24. At step one of the analysis, the ALJ found that Pearce had not engaged in substantial gainful activity during the period from his alleged onset date through his date of last insured. *Id.* At step two, the ALJ found that Pearce had the following severe impairments: obesity; lumbar degenerative disc disease; cervical degenerative disc disease left shoulder sprain; migraine headaches; neurocognitive disorder; major depressive disorder; and anxiety disorder. *Id.* 24-26. The ALJ, however, found that Pearce's other impairments of hypertension, thyroid disorder, and B-Cell lymphoma were not severe. *Id.* At step three, the ALJ found that none of Pearce's impairments meet or medically equal the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 26-28.

Before reaching step four of the analysis, the ALJ found that Pearce retains the physical capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), including lifting only 10 pounds occasionally and less than 10 pounds frequently with the ability to stand and/or walk for up to two hours in an eight-hour workday and sit for up to six hours in an eight-hour work day. The ALJ also imposed the following additional physical limitations:

> [Pearce] is limited to occasionally climbing ramps and/or stairs; and occasionally balancing, stooping, kneeling, crouching, and crawling. [Pearce] is limited to occasional overhead reaching with the non-dominant left arm. [Pearce] should avoid working at unprotected heights, climbing ladders, ropes or scaffolds and working in close proximity to dangerous machinery or moving mechanical parts of equipment. [Pearce] should avoid concentrated exposure to extreme cold, excessive noise, excessive vibration, and fumes, odors, dust, gases, and poorly ventilated areas.

*Id.* 28. With respect to his mental residual functional capacity, the ALJ determined that:

> [Pearce] can understand and follow simple instructions and directions; perform simple tasks with or without supervision; maintain attention/concentration for simple tasks; and regularly attend to a routine and maintain a schedule. [Pearce] is limited to occasional interaction with co-workers and supervisors, and no interaction wit the public. Work should be limited to simple tasks involving only simple, work-related decisions, with few, if any work place changes.

*Id.*

In making this residual-functional-capacity assessment, the ALJ afforded (1) "little weight" to the opinion of neuropsychological consultant Dr. Sean G. Connolly; (2) "partial weight" to the opinion of consultative psychologist Dr. Kristine Gerwell; and (3) "partial" weight to the opinions of the state agency medical consultants. *See id.* 40-41.

At step four, after considering this residual functional capacity and the testimony of the vocational expert, the ALJ determined that Pearce wasn't able to perform any past relevant work as a car salesman, truck driver, or a sales manager. *Id.* 41. At step five, however, the ALJ determined that considering Pearce's age, educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, Pearce could perform the following jobs existing in significant numbers in the national economy: lens inserter (Dictionary of Occupational Titles "DOT" # 713.687-026); polisher, eyeglass frames (DOT # 713.684-038); and final assembler (DOT # 713.687-018)—positions that the DOT classifies as sedentary and unskilled. *Id.* 42. Accordingly, the ALJ determined that Pearce was not disabled for purposes of the Act, and therefore was not entitled to receive benefits. *Id.*

Pearce subsequently requested review of the ALJ's finding, which the Appeals Council denied. *Id.* 8-17. Accordingly, on October 29, 2018, after exhausting all available administrative remedies, Pearce sought judicial review of the administrative determination. Dkt. No. 1.

## II. Legal Standards

*Standard of Review*. To review the denial of benefits, a court determines whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Factual findings supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

A claimant like Pearce is disabled only if his physical or mental impairment or impairments are so severe that he is unable to perform his previous work and cannot—considering his age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy (regardless of whether such work exists in the area in which he lives, a specific job vacancy exists, or he would be hired if he applied for work). 42 U.S.C. § 423(a)(1).

*Overview of the Evaluation Process and Burden of Proof.* "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents him [or her] from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id.*; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotations omitted).

An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of performing the work he has actually performed in the past or as defined by the DOT, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden then shifts to the Commissioner at step five to show there is other

gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**III.    Analysis**

For the reasons discussed below, I find substantial evidence supports the Commissioner's decision and the administrative proceedings involved no reversible legal error. Specifically, I find that the ALJ properly assessed Pearce's residual functional capacity and weighed the medical opinions in accordance with applicable law. I also find that the ALJ did not commit reversible error in assessing Pearce's subjective complaints.

*Pearce's migraines*. The ALJ did not commit reversible error when assessing Pearce's migraine headaches. In evaluating the limiting effects of Pearce's migraines, the ALJ observed that Pearce "reported a decrease in the frequency of his headaches with medication." Tr. 39 (citing *id.* 687-90 & 1022-24). In support, the ALJ cited a progress note from January 4, 2016 in which it is noted that Pearce stated his headaches had decreased in frequency from daily to 4 times a week but could still last for 3 days. *See id.*

Pearce's later medical records—which the ALJ cites in earlier portions of the opinion—reveal a greater level of improvement than reflected in the January 4, 2016 progress note. For example, on April 5, 2016, Pearce stated that with medication, his headaches had reduced to 3 to 4 times per week and only lasted a few hours with less intensity than before. *See* Tr. 34 (citing *id.*

691). Pearce's medication was subsequently increased, and by July 28, 2016, he reported that his headaches occurred only 2 times per week and were not as severe in intensity as before. *See id.* 35 (citing *id.* 695). Accordingly, in assessing Pearce's residual functional capacity, the ALJ properly considered the effectiveness of his migraine medication; pain alleviated by medication is not disabling. *See Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990).

Although Pearce reported that his migraines worsened a few months later in September 2016 and then again in April 2017, the record reflects that Pearce stopped taking his migraine medicine during this period—medication that Pearce's doctor believed was "treating [Pearce's] headaches adequately." *See* Tr. 36 (citing *id.* 823, 827) & *id.* 37 (citing *id.* 994). There is also no evidence suggesting that Pearce obtained glasses—a relatively easy treatment that Pearce's provider believed might further help reduce his headaches. *See* Tr. 35 (citing *id.* 882). The ALJ noted these various instances of non-compliance throughout her opinion, *see id.* 35-37, and properly took them into account when assessing Pearce's residual functional capacity.[4]

In light of these matters, there is no merit to Pearce's argument that the ALJ improperly concluded that Pearce's migraines had improved to non-disabling levels. Nor is it the case that, as Pearce contends, "the record it is clear that, despite compliance with his multiple prescribed medication, that he continued to experience migraines th[at] . . . were of such severity and frequency that they would result in both an absentee rate and time off-task that are well in excess of rates the VE [vocational expert] found to be work-preclusive." " Pl. Br. at 6.

Pearce's further contention that the ALJ ultimately provided no limitation in the residual-functional-capacity assessment based on Pearce's migraine improvement[5] is also contradicted by

---

[4] *See, e.g.*, *Tate v. Colvin*, No. CIV.A. 13-6552, 2014 WL 4982662, at *18 (E.D. La. Oct. 6, 2014) (ALJ properly considered claimant's failure to follow medication regimen when assessing her credibility and residual functional capacity).

[5] *See* Pl. Br. at 7.

the record. Pearce reported on several occasions that his headaches are "provoked by light as well as sound." Tr. 691, 695. Accordingly, the ALJ assessed a residual functional capacity wherein Pearce was to avoid "excessive noise." *Id.* 28. And, to further account for his migraines (as well as several of his other limitations), the ALJ assessed a less than a full range of sedentary work. *See id.* 40. Tellingly, Pearce doesn't explain what, if any, additional limitations the ALJ should have assessed to account for his migraines when formulating his residual functional capacity. And, although Pearce claims that his migraines were of "such severity and frequency that they would result in both an absentee rate and time off-task that are well in excess of rates the VE [vocational expert] found to be work-preclusive, Pl. Br. at 6, none of his record citations address whether his migraines would result in absenteeism or time off tasks. *See, e.g.*, *Vereen v. Barnhart*, No. 05-10, 2005 WL 3388139, at *5 (W.D. Tex. Nov. 16, 2005) (noting, "the plaintiff bears the ultimate burden of establishing that a specific diagnosed condition imposes actual exertional or non-exertional limitations").

Finally, Pearce's contention that the ALJ erred by failing to point to evidence that he could keep a job on a sustained basis (notwithstanding his migraines or any other limitations) is without merit. The ALJ's determination that Pearce was not disabled and therefore could maintain employment is subsumed within the ALJ's residual-functional-capacity determination. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).

*The medical opinions of record*. As his second point of error, Pearce argues that the ALJ improperly discounted the opinions of consultative psychological examiners Doctors Connolly and Gerwell. According to Pearce, the ALJ provided "almost no explanation for giving little weight to the[se] two opinions" and, instead, the ALJ provided a residual functional capacity assessment based on her own lay interpretation of the medical evidence. *See* Pl Br. at 7-8. But as discussed further below, the ALJ performed an extremely thorough review of the medical

evidence, explaining why she assigned "little weight" to Dr. Connolly's opinion and only "partial weight" to Dr. Gerwell's opinion. *See* Tr. 31-32; 34, 40-41. "What [Pearce] characterizes as the ALJ substituting [the ALJ's] opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). There is no reversible error here either.

<u>1. Dr. Connolly's opinion</u>. After interviewing Pearce on October 21, 2015 and conducting neuropsychological testing a few months later, Dr. Connolly opined that Pearce showed evidence of "neuropsychological dysfunctioning associated with higher cortical processes of the frontal lobes, including the executive functions of the frontal lobe, higher level analysis and problem solving, processing abstractions and conceptions, as well as concentration, focusing and maintaining attention." Tr. 516. Dr. Connolly accordingly opined that Pearce would likely have difficulty following more than one instruction at a time, multi-tasking, coping with interruptions, acquiring, retaining and retrieving new knowledge, information, and skills, performing timed and speeded tasks or being rushed or pressured for performance, speed, or productivity. *Id.* Dr. Connolly further opined that Pearce "is susceptible to being overwhelmed with too many expectations, with evidence of forgetfulness and difficulties in retaining information," and experiencing "episodes of disorientation and feeling loss." *Id.* But as the ALJ recognized, the severity of these assessed limitations is contradicted by objective tests and observations made by Dr. Connolly in his report. *See id.* 31-32; 40-41.

For example, after administering various tests to Pearce, Dr. Connolly observed that Pearce was "reasonably attentive to tasks and was able to focus concentration and did not need repetition of items or redirection. He did not seem particularly distractible in the testing situation." *Id.* 512. Indeed, Pearce's performance on the Wechsler Adult Intelligence Scale-IV ("WAIS-INV") indicated "moderately good attentiveness to auditory details" and "good

attentiveness to visual details." *Id.* Accordingly, Dr. Connolly noted that "[o]verall, the data would indicate moderately good attentiveness to auditory and visual details." *Id.* Pearce also tested in the "[a]verage range of intellectual functioning intelligence." *Id.* In terms of verbal intelligence, Pearce "show[ed] good ability for expressive language, a good fund of general knowledge, and social intelligence and practical judgment" and "good verbal and academic skills" *Id.* 514. In terms of nonverbal intelligence, Pearce demonstrated "good nonverbal problem-solving, visual special organization, nonverbal fluid reasoning, and alertness to visual details." *Id.* In the area of working memory, Pearce showed "good concentration and immediate memory, math concepts, and some mild deficits in alpha-numeric sequencing with dual concept tracking," and he tested in the average range, with no marked deficits in auditory and visual memory. *Id.* 514-15. *Id.* Finally, Pearce tests revealed "good verbal and academic skills," with "no evidence of any deficient, including the area of [f]luency, which tends to be sensitive to neurocognitive difficulties. *Id.* 514.

Although the ALJ recognized that Pearce's performance on the Test of Variables of Attention ("TOVA") revealed "marked difficulties with overall attention," *id.* 32 (citing *id.* 512), ultimately, the ALJ determined that Dr. Connolly's opinion was not supported by Pearce's *overall* objective test results. *Id.* 32, 40. She therefore afforded "little weight" to the opinion. *Id.* "[T]he Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015) (quotations omitted). "Moreover, the weight to be attributed to a physician's report depends upon the extent to which it is supported by specific clinical findings." *Kirksey v. Shalala*, 21 F.3d 1109, 1994 WL 171704, at *3 (5th Cir. Apr. 28, 1994). Dr. Connolly's failure to discuss these various test scores created internal discrepancies within the province of the ALJ to resolve, which the ALJ properly did here. *See id.* Further, the ALJ didn't completely reject Dr.

Connolly's opinion, as Pearce suggests. Rather, the ALJ determined that Dr. Connolly's opinion was "partially consistent with the finding that [Pearce] can perform simple work and make simple work-related decisions." Tr. 41. Accordingly, the ALJ did not err in evaluating Dr. Connolly's opinion.

    2. Dr. Gerwell's opinion. After interviewing Pearce on March 7, 2016, Dr. Gerwell opinioned that Pearce "can understand, carry out and remember instructions both complex and one-two step." *Id.* 667. Although Dr. Gerwell determined that Peace "can fairly sustain concentration," she found that Pearce "cannot persist in work-related activity at a reasonable pace[,]" and "cannot maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work setting." Tr. 667. The ALJ afforded "partial weight" to this opinion, determining that "[t]he objective evaluation of [Pearce] does not support Dr. Gerwell's opinion that [Pearce] could not carry out work activity at a reasonable pace." *Id.* 41. Specifically, the ALJ observed that according to Dr. Gerwell's own report, Pearce "maintained a stable pace" when completing tasks. *Id.* 34 (citing *id.* 665). Although Dr. Gerwell noted that Pearce had some difficulty completing most tasks, this difficulty was ascribed to Pearce's physical, not mental limitations. *Id.* The ALJ's decision to discount Dr. Gerwell's unsupported medical findings and to rely on the opinions that were supported by the objective medical evidence in the record was proper. *See Kirksey*, 1994 WL 171704, at *3.

    Moreover, the ALJ assessed a *more restrictive* mental residual functional capacity, concluding "[a]dditional evidence shows that [Pearce] would not be able to understand, remember and carry out complex work." *Id.* 41. It is difficult to imagine how this more restrictive residual-functional-capacity assessment could've prejudiced Pearce. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative

proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

The Commissioner's brief convincingly addresses the other medical opinions of record. But because Pearce doesn't dwell on these opinions or base a request for relief on an alleged error with respect to them, there is no need to address them any further now.

*Pearce's Subjective Complaints*. As his final point of error, Pearce argues that the ALJ "provided no explanation as to how the intensity and persistence of [his] symptoms, as testified to under oath, was contradicted by the record," in alleged violation of SSR 16-3p. *See* Pl. Br. at 11-16. For example, Pearce claims "there is no evidence that [his] severe obesity was adequately accounted for when addressing [his] pain and the need to change positions throughout the day." *Id.* at 14. Further, according to Pearce, his severe obesity under the old Social Security Listings would actually have itself necessitated a finding of disability. *Id.* 13. This argument does not warrant relief either.

"SSR 16-3p requires the ALJ to consider a claimant's statements about the intensity, persistence, and limiting effects of her symptoms, which the ALJ must then juxtapose against the objective medical and other evidence of record." *Naona N.E. v. Berryhill*, No. 3:17-CV-0597-D-BK, 2018 WL 5722677, at *7 (N.D. Tex. Aug. 20, 2018), *report and recommendation adopted*, 2018 WL 4356738 (N.D. Tex. Sept. 12, 2018). The ALJ complied with SSR 16-3p in all relevant respects by following the two-step process required by the Ruling. At the first step, the ALJ identified Pearce's medically determinable impairments. At the second step, the ALJ reviewed Pearce's testimony and subjective allegations, medical records including progress notes and treatments, all medical opinions of record, and Pearce's activities of daily living. After careful consideration of the entire administrative record, the ALJ determined that while Pearce's "medically determinable impairments could reasonably be expected to cause some of the alleged

symptoms[,]" Pearce's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in [the ALJ's] decision*." Tr. 39.

In discounting Pearce's subjective physical complaints, the ALJ cited Pearce's medical records indicating that facet block injections resulted in an 80% reduction in Pearce's lumbar pain, as well as a report from Pearce's treating provider noting that he had reached maximum medical improvement as of December 21, 2016. *See* Tr. 40. Although Pearce claimed to have tenderness in his cervical and lumbar spine, he was only mildly limited in range of motion and did not require the use of an assistive device. *See id.* 39. Further, although the ALJ recognized that Pearce had been diagnosed with obesity, she also observed that Pearce had been successful with weight loss due to dietary changes and had been referred to physical therapy to assist with both weight loss and joint pain. *See id.* 40. Indeed, by June 2017, Pearce reported loosing a total of 53 pounds due to dietary changes. *See id.* 766. And as discussed in detail above, the ALJ found that Pearce's migraines had decreased with medication. *See id.* 39. In addition to the medical evidence and effectiveness of treatment, the ALJ considered Pearce's reported daily activities,[6] which included shopping, picking up things off the counter, spending time with family, living with others, handling self-care and personal hygiene, watching television, caring for pets, and walking to the mailbox and to the pool to get some exercise. *Id.* 39.

For all these reasons, the ALJ determined that the limitations imposed by Pearce's obesity, cervical spine and lumbar spine degenerative disc disease, left shoulder sprain and headaches were properly reflected by a limitation of less than a full range of sedentary work. *See id.* 40. In other words, while evidence supports Pearce's contentions that his conditions were limiting, those contentions don't demand a finding of disabled; Pearce's subjective complaints

---

[6] *See* SSR 16-3p(d)(1).

"need not take precedence over objective evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Finally, Pearce's assertion that he meets an obsolete listing in the regulations is not conclusive on the issue of his alleged disability during the relevant time period.

## IV.     Conclusion and Recommendation

For the reasons discussed above, substantial evidence supports the Commissioner's decision and the administrative proceedings involved no reversible legal error. The Commissioner's decision that Pearce is not disabled should therefore be **AFFIRMED.**

All matters for which the above-entitled and numbered case were referred to the undersigned have been considered and acted upon. **IT IS THEREFORE ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).

Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 28th day of October, 2019.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE